**IN THE CHANCERY COURT OF TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**
**SUMMONS IN CIVIL ACTION**

No. _C.H.08-2292~1_ D_____ AD DAMNUM $_____ AUTO ☐ OTHER ☒

__CATHY WHITE RICE__

_____          _____
                                          Home Address

_____

        PLAINTIFF                         Business Address

Vs.
__BRIAN ASKINS and__                      _____

__MUTUAL OF OMAHA INSURANCE COMPANY__     Home Address

_____

        DEFENDANT                         Business Address

TO THE DEFENDANT(S): Mutual o Omaha Insurance Company, to be served: ATTN: Service of Process

State of TN, Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, TN 37243-1131

   You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on Robert M. Fargarson, Esq., Plaintiff's attorney, whose address is 254 Court Avenue, Suite 300, Memphis, TN 38103, (901) 523-2500 telephone, within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

                                          Clerk

**TESTED AND ISSUED** _____, 2008  By _____, D.C.

**TO THE DEFENDANT (S):**
Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed, these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**COST BOND**
I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs not to exceed $500.00 in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

   Witness my hand this _____ day of _____, 2008.

Certification when applicable

                                          _____
                                          Surety

EXHIBIT
A

## RETURN ON SERVICE OF SUMMONS

**I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:**

By delivering on the _____ day of _____, 2008, at _____ M., a copy of the summons

and a copy of the Complaint to the following defendants _____

_____

By: _____
Deputy Sheriff

### PRIVATE PROCESS SERVER

**I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:**

By delivering on the _____ day of _____, 2008, at _____ M., a copy of the summons

and a copy of the Complaint to the following defendants _____

_____

_____
Address

_____          _____
Private Process Server                                                   Phone

_____          _____
Company                                                                       Signature

**Other manner of service:**

_____

_____

_____

I hereby certify that I have NOT served this Summons on the within named defendant(s)_____

_____ Because_____ is (are) not to be found in

this County after diligent search and inquiry for the following reasons:_____

This _____ day of _____, 2008.

By: _____
Deputy Sheriff

No. _____ D. _____

IN THE CHANCERY COURT
OF TENNESSEE
FOR THE THIRTIETH JUDICIAL
DISTRICT AT MEMPHIS

SUMMONS IN CIVIL ACTION

CATHY WHITE RICE
PLAINTIFF

VS

MUTUAL OF OMAHA, et al
DEFENDANT

Came to hand

ROBERT M. FARGARSON, ESQ.
FARGARSON & BROOKE
254 Court Avenue, Suite 300
Memphis, TN 38103

Attorney for Plaintiff

Tel No. _____ 901-523-2500

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

CATHY WHITE RICE,

    Plaintiff,

VS.                                                                           NO. CH-08-2292-1

BRIAN ASKINS and
MUTUAL OF OMAHA INSURANCE COMPANY,

    Defendants.

---

## COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT

---

    **NOW COMES** the Plaintiff, Cathy White Rice, and sues the Defendants, Brian Askins and Mutual of Omaha Insurance Company, for damages for breach of contract, and for her cause of action, states:

### JURISDICTION AND VENUE

    1.    The Plaintiff, Cathy White Rice, is a resident of Desoto County, Mississippi.

    2.    The Defendant, Brian Askins, upon information and belief, is alleged to be a resident citizen of Springfield, Green County, Missouri.

    3.    The Defendant, Mutual of Omaha Insurance Company, upon information and belief, is an insurance corporation organized and existing under the laws of the State of Nebraska, but does business in other parts of the United States, including the State of Tennessee.

    4.    The cause of action brought by the Plaintiff, Cathy White Rice, arises out of an agency contract with the Defendants entered into and to be performed principally in Memphis, Shelby County, Tennessee, but also in the Tri-State area, by which contract, Cathy White Rice

26076                                         1

was a sales representative/independent contractor of Mutual of Omaha, the other specific terms of which are to be hereinafter related.

## FACTS OF THE CASE

5.   The Plaintiff, Cathy White Rice, alleges that she had previously been a sales representative for Mutual of Omaha Insurance Company, but terminated her prior working agreement on or about December 15, 2003.

6.   The Plaintiff, Cathy White Rice, alleges that she re-contracted as a sales representative for Mutual of Omaha Insurance Company on or about August 16, 2007. A copy of the contract is attached as Exhibit 1.

7.   Prior to agreeing to be sales representative of Mutual of Omaha, the Plaintiff, Cathy White Rice, met with and discussed the sales contract in Memphis with the Defendant, Brian Askins, the manager of Mutual of Omaha, with authority over sales representatives in the Memphis, Shelby County, Tennessee area. As a condition of her agreement with Mutual of Omaha, she was promised that she would receive compensation and commissions of renewals on the business that she had previously produced as a sales representative of Mutual of Omaha. The Plaintiff alleges that her desire to again work as a sales representative for Mutual of Omaha was because she was promised that she would receive compensation and commissions from her previous sales during the time of her prior work with Mutual of Omaha.

8.   At the time of her discussion of returning to Mutual of Omaha as a sales representative, she was employed by Fidelity Mortgage Group and she would never have left her employment, except for the promise of compensation based upon the terms and conditions that she would receive the commissions from her previous sales of insurance contracts that were still active and being renewed. Based upon the promise of the payment of commissions, she resigned

26076                                               2

her employment with Fidelity Mortgage Group and agreed to be a sales representative, known as a career agent, for Mutual of Omaha Insurance Company.

9.   The promises made to the Plaintiff were made in Memphis, Tennessee in a personal conference with Brian Askins, manager of Mutual of Omaha and alleged Defendant herein.   The terms of the Plaintiffs agreement were that her work was to be performed and carried out in Memphis, Tennessee, and she was to work primarily out of an office in Memphis, Shelby County, Tennessee.

10.   The Plaintiff alleges that, based upon the promises of compensation entered into with Brian Askins on behalf of Mutual of Omaha, she commenced her sales contract and performed all the necessary sales activities to receive the compensation and commissions promised to her, but when the commission renewals on her sales contracts from the previous work for Mutual of Omaha were not paid to her, she made inquiry concerning payment of the monthly renewals and was advised, after a number of conversations and emails, that the monthly renewals would start in February of 2008.   When she did not receive the renewals in February, she inquired again and received different reasons for the delay or failure in payment of the commissions on the renewals, including a failure to qualify for the renewals, based upon sales activity.

11.   The Plaintiff, Cathy White Rice, alleges that she met all the conditions of her agreement necessary for the Defendants to keep the promise made to her, but they have continuously failed to do so and have not paid her the compensation and commissions due her based upon the promises made to her prior to her re-contracting with the company.

26076                                                         3

12.    As previously stated herein, the Plaintiff resigned her employment with the Fidelity Mortgage Bank based on the promises of compensation and commissions on sales contract renewals from her sales contracts which she previously sold for Mutual of Omaha.

**WHEREFORE, AND FOR ALL OF WHICH,** the Plaintiff, Cathy White Rice, sues the Defendants, Brian Askins and Mutual of Omaha Insurance Company for damages in the amount of $300,000.00, and demands judgment in this cause.

Respectfully Submitted,

FARGARSON & BROOKE

ROBERT M. FARGARSON, ESQ. (#8420)
Counsel for Plaintiff
254 Court Avenue, Suite 300
Memphis, TN 38103
(901) 523-2500

26076                                    4

# MUTUAL OF OMAHA COMPANIES
## Agent Data Sheet

## CATHY L RICE

Production Number:         0204621
Contract Effective Date:   08/16/2007
BRIAN ASKINS DIVISION OFFICE

Home Address:  1742 CHERRY CREEK DR
SOUTHAVEN, MS  38671

AUTHORIZED AFFILIATED COMPANIES:
MUTUAL OF OMAHA INSURANCE COMPANY
UNITED OF OMAHA LIFE INSURANCE COMPANY
UNITED WORLD LIFE INSURANCE COMPANY
MOMCO

LICENSES/APPOINTMENTS:

| License No. | Issue Date | Cancel Date | Company | Type | State |
|-----------|-----------|-----------|---------|------|-------|
| 319734 | 08/23/2007 | | MUTUAL | H&A | AR |
| 319734 | 08/23/2007 | | UNITED | H&A AND LIFE | AR |
| 319734 | 08/23/2007 | | UNITED WORLD | LIFE | AR |
| 9304915 | 07/02/2007 | | MUTUAL | H&A | MS |
| 9304915 | 08/16/2007 | | UNITED | H&A AND LIFE | MS |
| 9304915 | 07/02/2007 | | UNITED WORLD | LIFE | MS |
| 734054 | 08/16/2007 | | MUTUAL | H&A | TN |
| 734054 | 08/16/2007 | | UNITED | H&A AND LIFE | TN |
| 734054 | 08/16/2007 | | UNITED WORLD | LIFE | TN |

AMENDMENTS:

| Name | Number | Effective Date |
|------|--------|----------------|
| CAREER FINANCING PLAN AMENDMENT | 211-002 | 12/05/2007 |
| MEDICARE PART D ADDENDUM | 240-001 | 10/18/2007 |
| AGENT PROSPECTING AMENDMENT | 245-001 | 12/05/2007 |
| HIPAA PRIVACY AMENDMENT | 248-001 | 08/16/2007 |

(Continued)

Exhibit 1

# MUTUAL OF OMAHA COMPANIES
## Agent Data Sheet

# CATHY L RICE

AMENDMENTS: (Continued)

| Name | Number | Effective Date |
|------|--------|----------------|
| COMPUTER SOFTWARE LICENSE AMENDMENT | 283-001 | 08/16/2007 |

SCHEDULES:

| Name | Number | Effective Date |
|------|--------|----------------|
| MUTUAL OF OMAHA INSURANCE COMPANY COMPENSATION SCHEDULE | 201-001 | 08/16/2007 |
| UNITED OF OMAHA LIFE INSURANCE COMPANY COMPENSATION SCHEDULE | 202-001 | 08/16/2007 |
| NEW AGENT COMPUTER EQUIPMENT ALLOWANCE SCHEDULE | 203-002 | 12/03/2007 |
| QUALIFICATION SCHEDULE | 204-001 | 08/16/2007 |
| MUTUAL OF OMAHA MARKETING CORPORATION COMPENSATION SCHEDULE | 209-001 | 08/16/2007 |
| AGENT PRODUCTION BONUS SCHEDULE | 220-002 | 12/03/2007 |
| UNITED WORLD LIFE INSURANCE COMPANY COMPENSATION SCHEDULE | 222-001 | 08/16/2007 |
| FINANCIAL PROFILES FORECASTER SCHEDULE | 224-003 | 08/16/2007 |
| AGENT PROSPECTING SCHEDULE | 246-002 | 12/03/2007 |
| 2005+ DEFERRED COMPENSATION SCHEDULE | 258-001 | 12/03/2007 |

By contracting with the Mutual of Omaha Companies, you may be required to complete the anti-money laundering training prior to selling permanent life and/or annuity products. Check with your manager prior to selling these products.

DECEMBER 8, 2007

## CAREER FINANCING PLAN AMENDMENT

**ADDITIONAL DEFINITIONS ARE SET FORTH IN SECTION H.**

**The Company and Agent agree to the following terms and conditions:**

A.    **Career Financing Plan.** This Career Financing Plan ("CFP") is a financing plan under which a new Agent may qualify to receive CFP payments, as set forth in this Amendment, in addition to other compensation payable to Agent under the Contract Schedules. The Agent is eligible to receive an "Apptivity Bonus" in plan month 1. In plan months 1-36, the Agent is eligible to receive "Production Payments" based on Agent's issued Needs Based Product NFYC. Agent must meet ongoing "Results" validation requirements to remain on CFP.

B.    **Requirement to have Active Contract/Forfeiture.** In order to receive each CFP Payment, the Agent's Contract must be in effect on the last day of the applicable plan month. If Agent's Contract is not in effect on the last day of the applicable plan month, Agent's CFP payment shall be forfeited.

C.    **Apptivity Bonus.** The execution of this Amendment by both Agent and Company shall qualify Agent to receive an "Apptivity Bonus." The amount of the Apptivity Bonus is determined by the number of Needs Based Product applications Agent submitted to Company prior to signing this Amendment as follows:

| Number of Needs Based Product Applications | Apptivity Bonus Amount |
|---|---|
| 5 or less | $ 0 |
| 6 or more | $750 |

D.    **Production Payments During Plan Months 1-36.** During plan months 1-3, the Agent's Production Payment rate will be 73% and during plan months 4-6, the Agent's Production Payment rate will be 48%. During plan months 7-36, the Agent's Financing Production Level will be determined at the end of plan months 6, 9, 12, 15, 18, 21, 24, 27, 30 and 33 and will apply for purposes of the table set forth in this Section for the following three plan months until the next Financing Production Level measurement.

Agent is eligible to receive a monthly "Production Payment" which is determined by multiplying the Agent's issued Needs Based Product NFYC from the corresponding plan month by the Agent's applicable plan month production rate provided in this Section.

| Plan Months | Rate When Financing Production Level Achieved | Rate When Financing Production Level Not Achieved |
|---|---|---|
| 1*-3 | 73% | 73% |
| 4-6 | 48% | 48% |
| 7-12 | 48% | 19% |
| 13-24 | 37% | 14% |
| 25-36 | 23% | 5% |

*Plan month one includes issued Needs Based NFYC from the Interim Sales and Marketing period.

The maximum monthly Production Payment is $4,000 in plan months 1-3, $3,000 in plan months 4-12, $2,500 in plan months 13-24 and $2,000 in plan months 25-36. The maximum monthly potential Production Payment chargeback is $4,000 in plan months 1-3, $3,000 in plan months 4-12, $2,500 in plan months 13-24 and $2,000 in plan months 25-36.

E.  **Validation to Remain on CFP.** This Amendment will automatically terminate if Agent fails to meet the "Results" criteria set forth in this Section for two consecutive quarters during plan months 7-36.

**Results.** Agent must meet the cumulative issued Manufactured NFYC requirements for plan months 6, 9, 12, 15, 18, 21, 24, 27, 30 and 33 ("Quarterly Results Requirement") as provided in the table below.

| Plan Months* | Quarterly Results Requirements (Cumulative Issued Manufactured NFYC Target) |
|---|---|
| 1—6 | 3,833 |
| 1—9 | 7,667 |
| 1—12 | 11,500 |
| 1—15 | 15,138 |
| 1—18 | 18,775 |
| 1—21 | 22,413 |
| 1—24 | 26,050 |
| 1—27 | 30,450 |
| 1—30 | 34,850 |
| 1—33 | 39,250 |

*Includes issued Manufactured NFYC from the Interim Sales and Marketing period.

F.  **Plan Months.** For purposes of this CFP Amendment, plan month one begins in the calendar month of the effective date of this Amendment, or as otherwise agreed by Company and Agent in writing.

G.  **CFP Termination.** This CFP Amendment shall be terminated upon the earlier of:

1.  The end of plan month 36.
2.  Cancellation of the Contract.
3.  Termination of the Amendment pursuant to Section E of this Amendment, or
4.  Notice from either party of its intent to terminate this Amendment.

H.  **General Rules and Definitions.**

1.  **Definitions.** For purposes of this Amendment:

    (a)  "**Manufactured**" shall mean Needs Based Products and Medicare Supplement, Medicare Select, Medicare Trust, Accident Only Medical, Accident Only Medical Payroll Deduction, Accident Only Disability, Hospital Income and 401(k) Products, including Worksite, manufactured by Mutual of Omaha Insurance Company, United of Omaha Life Insurance Company and United World Life Insurance Company.  See commission notifications for specific Product eligibility.

    (b)  "**Needs Based**" shall mean Fixed Life, Fixed Annuities, Mainline Disability, Critical Illness and Long Term Care Products, including Worksite, manufactured by Mutual of Omaha Insurance Company or United of Omaha Life Insurance Company.  See commission notifications for specific Product eligibility.

    (c)  "**NFYC**" shall mean net first year commissions.

2.    **Financing Production Level.**  For purposes of this Amendment, Agent will be considered to have achieved the Financing Production Level if the following minimum Manufactured NFYC requirements are attained when measured in each of plan months 6, 9, 12, 15, 18, 21, 24, 27, 30 and 33 as provided in this Section.

| Plan Months in Measurement* | Manufactured NFYC Required to Achieve Financing Production Level |
|---|---|
| 1—6 | 11,000 |
| 1—9 | 16,500 |
| 1—12 | 22,000 |
| 13—15 | 5,500 |
| 13—18 | 11,000 |
| 13—21 | 16,500 |
| 13—24 | 22,000 |
| 25—27 | 5,500 |
| 25—30 | 11,000 |
| 25—33 | 16,500 |

*Includes issued Manufactured NFYC from the Interim Sales and Marketing period.

3.    All production calculations will be based on Home Office records.  CFP payments earned under this Amendment are subject to the Agent's Account provisions of the Contract, including chargeback provisions.  The Company shall have the absolute right, in its sole discretion, to determine whether applications submitted by the Agent qualify for CFP.

4.    NFYC credit and related compensation may be adjusted as required by any applicable laws or regulations and may be revised, modified or supplemented by the Company at any time.

5.    This Amendment may be modified or replaced by the Company upon notice to the Agent.  In the event this Amendment is modified or replaced, the Agent may elect to:

    **(a)**    Continue performing under the modified or replacement Amendment, if any, for the remainder of the applicable term,

    **(b)**    Terminate this Amendment with no further obligation on the part of Company, or

    **(c)**    Choose such other option(s) as the company may generally make available to Agents.

6.    If Agent does not qualify for a CFP payment in any plan month, the Agent may not recover such CFP payment in any other plan month.

7.    The administrative rules, practices and procedures regarding CFP may be revised, modified or supplemented by the Company from time to time.

COMPANY                                      AGENT

By: *BRIAN ASKINS D.O.*                       By: *CATHY W. RICE*        *204621*
(Printed or Typed Field Representative Name)   (Printed or Typed Agent Name)   (Production #)

_____  12/3/2007           _____  *12.3.07*
(Signature of Field Representative)   (Date)    (Signature of Agent)   (Date)

Effective Date **DECEMBER 3, 2007**_____.

_____

Signature of approving Authorized Representative   _____
Date: _____ 20__.

_____

(To be Completed By Agent Only if Applicable)

I, the undersigned Agent, acknowledge that:

_____    I have voluntarily elected to not accept Career Financing Plan Compensation.

_____    I am not eligible to receive Career Financing Plan Compensation in accordance with Company rules. As a result, the terms of this Amendment are not applicable to me.

_____
(Signature of Agent)                      (Date)

# AGENT PROSPECTING AMENDMENT

## I.   PURPOSE

The Company and Agent agree to the following terms and conditions to assist the Agent in obtaining prospect information.

## II.   DEFINITIONS

Throughout this Amendment, the definitions set forth below shall apply to both the singular and plural versions of the defined term.

**"Participation Fee"** shall mean a non-refundable amount paid by the Agent for participation in the Agent Prospecting Program.

**"Agent Prospecting Program"** shall mean the program described in this Amendment.

## III.   EFFECTIVE DATE

This Amendment shall become effective on the date indicated below when signed by an Authorized Representative.

## IV.   TERMINATION

This Amendment shall terminate upon:

A.   Cancellation of the Contract;

B.   Written notice from one party to the other; or

C.   Discontinuation of the payment of Participation Fees by the Agent.

## V.   SOURCES OF CREDITS

A.   In order to provide the Agent with prospect information, the Agent and Company agree that credits to acquire prospecting related materials and services may be accumulated in an Agent Prospecting Account. The Company may discontinue or modify the sources and amounts of credits provided by the Company upon notice to the Agent.

B.   Credits may be used only for prospecting activities authorized by the Company. Any credits which remain unused at the time the Contract or this Amendment are cancelled shall be forfeited by the Agent.

## VI.   NON-REFUNDABLE PARTICIPATION FEE

A.   The Agent authorizes the Company to deduct a non-refundable Participation Fee directly from compensation due the Agent in an amount and frequency as set forth in the Agent Prospecting Schedule.

B.   Company may deduct the Participation Fee up to 30 days following written notice by Agent to Company to terminate this Agreement.

## VII.   ADMINISTRATIVE RULES

The administrative rules, practices and procedures regarding the Agent Prospecting Program outlined in this Amendment may be revised, modified or supplemented by the Company from time to time.

## VIII.   LAWS & REGULATIONS

The Agent Prospecting Program may be adjusted as required by any applicable laws or regulations.

## IX.   PROSPECTING SCHEDULE

Additional details concerning the Agent Prospecting Program shall be set forth in Agent Prospecting Schedule which is incorporated herein by reference. The Agent Prospecting Schedule may be modified from time to time by the Company.

**COMPANY:**

By: _BRIAN ASKINS D.O._
(Printed or Typed Field Representative Name)

_____  12/3/07
(Signature of Field Representative)   (Date)

**AGENT:**

By: _CATHY RICE   264621_
(Printed or Typed Agent Name and Production #)

_____  12-3-07
(Signature of Agent)   (Date)

Effective Date  **DECEMBER 3, 2007** .

Signature of approving Authorized Representative _____
Date: ____DEC 4 2007_____ 20__

## NEW AGENT
## COMPUTER EQUIPMENT ALLOWANCE SCHEDULE

### I.     QUALIFICATION

After the Agent accepts the Career Financing Plan Amendment (211) or (235), the Agent may qualify to receive a credit to help the Agent defray computer equipment and other start-up expenses incurred based on the Agent's performance as follows:

Plan Month 1 Issued Manufactured NFYC Requirement*
- No credit for 1,932 or less
- $75 credit for 1,933 to 2,383
- $150 credit for 2,384+

Plan Months 2-12 Issued Monthly Manufactured NFYC Requirement
- No credit for 1,486 or less
- $75 credit for 1,487 to 1,833
- $150 credit for 1,834+

*Includes NFYC issued during IS&M

### II.     GENERAL PROVISIONS

A.   **TERMINATION OF THIS SCHEDULE.**  This Schedule shall remain effective until the occurrence of the earlier of:

1.     Cancellation of Agent's Contract;
2.     Notice from Company to Agent that this Schedule is no longer in effect;
3.     Twelve months from the effective date of this Schedule.

B.   **ADMINISTRATIVE RULES.**  The administrative rules, practices and procedures may be revised, modified or supplemented by the Company from time to time.

C.   **DEFINITIONS**

1.     **"Manufactured"** shall mean Needs Based Products and Medicare Supplement, Medicare Select, Medicare Trust, Accident Only Medical, Accident Only Medical Payroll Deduction, Accident Only Disability, Hospital Income and 401(k) Products, including Worksite, manufactured by Mutual of Omaha Insurance Company, United of Omaha Life Insurance Company and United World Life Insurance Company.  See commission notifications for specific Product eligibility.

2.     **"Needs Based"** shall mean Fixed Life, Fixed Annuities, Mainline Disability, Critical Illness and Long Term Care Products, including Worksite, manufactured by Mutual of Omaha Insurance Company and United of Omaha Life Insurance Company. See commission notifications for specific Product eligibility.

3.   "**Plan Month**", for purposes of this Schedule, plan month one begins in the first calendar month of the effective date of the Career Financing Plan Amendment (211) or (235). Subsequent plan months occur thereafter.

---

**THIS SCHEDULE, IF APPLICABLE, IS INCORPORATED INTO THE AGENT'S CONTRACT EFFECTIVE AS OF THE LATTER OF THE 1ST DAY OF NOVEMBER, 2005 OR THE EFFECTIVE DATE OF THE AGENT'S CONTRACT AND SHALL SUPERSEDE ANY PRIOR SCHEDULES RELATING TO THE SUBJECT MATTER ADDRESSED HEREIN.   THIS SCHEDULE SHALL REMAIN EFFECTIVE UNTIL CANCELED OR OTHERWISE MODIFIED BY THE COMPANY.**

Michelle A. Lebens
Authorized Representative

## AGENT PRODUCTION BONUS SCHEDULE

### I.      PURPOSE

The purpose of the Production Bonus ("Production Bonus") is to reward Agents based on their Manufactured Product production.

### II.      QUALIFICATION

The Agent is eligible for the Production Bonus only if the Agent is actively producing business at the time the Production Bonus is paid.

### III.      CALCULATION

A.      Rolling Six-Month Manufactured NFYC Determination.

1.      **Determination of Rolling Six-Month Manufactured NFYC.** For purposes of determining Agent's Production Bonus Rate, Agent's Rolling Six-Month Manufactured NFYC is determined as follows:

| Regular Semi-Annual Measurement Month | Rolling Six-Month Manufactured NFYC In Measurement | Rate Effective for the Following Months |
|---|---|---|
| January | Prior July through December | Following February through July |
| July | Prior January through June | Following August through January |

2.      **Determination of Rolling Manufactured NFYC for New Agents.** For purposes of determining new Agent's Production Bonus Rate, new Agent's Rolling Manufactured NFYC is determined by the following table. A new Agent's Production Bonus Rate, for purposes of this Section A.2 shall be the greater of the rate achieved by the Agent or 19%.

| Measurement Month | Months of Manufactured NFYC In Measurement | Rate Effective for the Following Month(s) |
|---|---|---|
| Month 2 | Prior Month 1* | Month 1 |
| Month 3 | Prior Months 1* through 2 | Month 2 |
| Month 4 | Prior Months 1* through 3 | Month 3 |
| Month 5 | Prior Months 1* through 4 | Month 4 |
| Month 6 | Prior Months 1* through 5 | Month 5 |
| Month 7 | Prior Months 1* through 6 | Month 6 plus any additional Months to Next Regular Semi-Annual Measurement Month. Thereafter use Table in A.1 and discontinue 19% minimum Rate. |

*Includes Manufactured NFYC from IS&M period.

B.    **Production Bonus Rate.** The Production Bonus Rate is determined from the following table.

| Rolling Six-Month Manufactured NFYC (from A.1 or A.2) | Production Bonus Rate |
|:---:|:---:|
| <7,500 | 0% |
| 7,500—9,499 | 5% |
| 9,500—11,749 | 19% |
| 11,750—13,999 | 22% |
| 14,000—15,249 | 29% |
| 15,250—16,749 | 32% |
| 16,750—19,499 | 35% |
| 19,500—22,249 | 39% |
| 22,250—24,999 | 43% |
| 25,000—27,499 | 48% |
| 27,500—29,749 | 53% |
| 29,750—31,749 | 59% |
| 31,750+ | 69% |

C.    **Calculation of Production Bonus.** The Production Bonus Rate is applied to first year commissions paid to an Agent during the applicable month for Bonus Eligible Products issued while this Schedule is in effect.

D.    **Applicability of Bonus Rate.** The Production Bonus Rate determined at the policy's initial issue for any Bonus Eligible Product shall remain in effect for the entire first policy year for such Bonus Eligible Product.

## IV.    DEFINITIONS

A.    "**Bonus Eligible Products**" shall mean all Manufactured Products except Medicare Supplement, Medicare Select, Medicare Trust, Accident Only Medical Payroll Deduction, Annuities, 401(k), Worksite Products and other state special Products as noted in the applicable commission notifications.

B.    "**Manufactured**" shall mean Needs-Based Products and Medicare Supplement, Medicare Select, Medicare Trust, Accident Only Medical, Accident Only Medical Payroll Deduction, Accident Only Disability, Hospital Income and 401(k) Products, including Worksite, manufactured by Mutual of Omaha Insurance Company, United of Omaha Life Insurance Company and United World Life Insurance Company. See commission notifications for specific Product eligibility.

C.    "**Needs-Based**" shall mean Fixed Life, Fixed Annuities, Mainline Disability, Critical Illness and Long Term Care Products, including Worksite, manufactured by Mutual of Omaha Insurance Company and United of Omaha Life Insurance Company. See commission notifications for specific Product eligibility.

D.    "**NFYC**" shall mean net first year commissions.

## V.    ADMINISTRATIVE RULES

The administrative rules, practices and procedures regarding compensation may be revised, modified or supplemented by the Company from time to time.

**THIS SCHEDULE, IF APPLICABLE, IS INCORPORATED INTO THE AGENT'S CONTRACT, EFFECTIVE AS OF THE LATTER OF THE 1ST DAY OF SEPTEMBER, 2005 OR THE EFFECTIVE DATE OF THE AGENT'S CONTRACT AND SHALL SUPERSEDE ANY PRIOR SCHEDULES RELATING TO THE SUBJECT MATTER ADDRESSED HEREIN.    THIS SCHEDULE SHALL REMAIN EFFECTIVE UNTIL CANCELED OR OTHERWISE MODIFIED BY COMPANY.**

Michelle A. Lebens
Authorized Representative

220.002  09-05
M24956

## AGENT PROSPECTING SCHEDULE

The Agent has agreed to the terms and conditions of the Agent Prospecting Amendment.

## I.   PARTICIPATION FEE

No charge.

## II.   SOURCES OF CREDITS

Credits may be accumulated on a monthly basis in an Agent Prospecting Account from the following sources:

A.   **PRODUCTION.** The Agent will be credited an amount equal to .012 multiplied by the Agent's monthly Prospecting Credit Eligible Products' NFYC for each month that the Agent has at least 11,000 rolling six-month Manufactured NFYC. Such credits shall begin accumulating upon the effective date of this Schedule.

B.   **VOLUNTARY AGENT CONTRIBUTIONS.** The Agent will be credited an amount equal to one credit for every dollar contributed by the Agent.

C.   **CAREER START CREDITS.** Agent will receive 750 credits at the time Agent terminates the Interim Sales and Marketing Amendment and either accepts or declines Amendments (211), (219), (235) or (238).

## III.   REDEMPTION OF CREDITS

A.   **PROSPECTING MATERIALS AND SERVICES.** The Agent may redeem credits in exchange for prospecting related materials and services. The Company will determine the types and pricing of prospecting related materials and services to be made available under the Agent Prospecting Program.

B.   **CHARGES.** Charges for prospecting related materials exceeding the credits in the Agent Prospecting Account, will be made directly to the Agent's expense statement.

## IV.   GENERAL RULES

A.   **DEFINITIONS.**

1.   **"Manufactured"** shall mean Needs-Based Products and Medicare Supplement, Medicare Select, Medicare Trust, Accident Only Medical, Accident Only Medical Payroll Deduction, Accident Only Disability, Hospital Income and 401(k) Products, including Worksite, manufactured by Company, except where noted in commission notifications.

2.   **"Needs-Based"** shall mean Fixed Life, Fixed Annuities, Mainline Disability, Critical Illness, Long Term Care Products, including Worksite, manufactured by Company.

3.   **"NFYC"** shall mean net first year commissions.

4.   **"Prospecting Credit Eligible Products"** shall mean all Manufactured Products except for 401(k) Products.

B.   All contributions and calculations shall be based on Home Office records. Credits to the Agent may be adjusted or charged back if the Moneys on which such credit was based are not collected or are refunded by the Company.

## V.    PROSPECTING AMENDMENT

A.    Additional details concerning the Agent Prospecting Program shall be set forth in the Agent Prospecting Amendment (245).

B.    This Schedule shall only be effective in conjunction with the Agent Prospecting Amendment (245).

**THIS SCHEDULE, IF APPLICABLE, IS INCORPORATED INTO THE AGENT'S CONTRACT, EFFECTIVE AS OF THE LATTER OF THE FIRST DAY OF FEBRUARY, 2006 OR THE EFFECTIVE DATE OF THE AGENT'S CONTRACT AND SHALL SUPERCEDE ANY PRIOR SCHEDULES RELATING TO THE SUBJECT MATTER ADDRESSED HEREIN. THIS SCHEDULE SHALL REMAIN EFFECTIVE UNTIL CANCELLED OR OTHERWISE MODIFIED BY COMPANY.**

Michelle A. Lebens
Authorized Representative

## 2005+ DEFERRED COMPENSATION SCHEDULE
### (Effective January 1, 2005)

This 2005+ Schedule applies to deferred compensation credited to Agent under this 2005+ Schedule and amounts compounded thereon.

The terms and conditions controlling such deferred compensation are as follows:

## DEFINITIONS ARE SET FORTH IN SECTION G

**A.     DEFERRED COMPENSATION CALCULATIONS.**

    **1.**    **Increases in Base Amount.**  Each month an amount shall be calculated by multiplying the Eligible Moneys for the month by the Calculation Rate.  This amount shall be added to Agent's Base Amount.

    **2.**    **Compounding of Base Amount.**  At the end of each calendar year, Agent's Base Amount shall be increased by an amount determined by multiplying the smallest value of the Base Amount, if any, during the calendar year by:

        **(a)**    the applicable Compounding Rate, provided that during the calendar year Agent produces at least the minimum production as defined in the Qualification Schedule; otherwise,

        **(b)**    one-half (½) times the Compounding Rate.

    **3.**    **Payout Amount.**

        **(a)**    With respect to the Base Amount, Agent's Payout Amount shall be equal to 0% until the close of the calendar year in which Agent is credited with a 6th Eligible Year.  Agent's Payout Amount at the end of the 6th Eligible Year shall equal 20% of the Base Amount.  For each additional Eligible Year credited to Agent thereafter, Agent's Payout Amount shall increase at the rate of 20% until Agent's Payout Amount is 100%.

        **(b)**    If distributions have commenced to be made to an Agent who is not fully Vested in the Base Amount (excluding for Elective Deferrals) and Agent increases the Vested amount in the Base Amount, then at any relevant time, Agent's additional Vested amount of the Base Amount (excluding Elective Deferrals) that is subject to payment will be equal to an amount "X" determined by the following formula:

$$X = P (A + D) - D$$

        $P =$    Agent's Vested percentage in the Base Amount (excluding Elective Deferrals) at the relevant time as determined by Paragraph A.3(a)

$A =$    the current value of the Base Amount (except for Elective Deferrals) at the relevant time for which scheduled payment has not commenced

$D =$    the sum of the Base Amount which has been distributed and/or are on a scheduled distribution to Agent (excluding compounding credited thereon at the time payments commenced).

(c)    The Base Amount shall be reduced by any portion of the Base Amount that becomes subject to a Payout Amount.

4.    **Forfeiture.** Except in the case of a transfer under Section D, upon termination of the Contract, Agent's Payout Amount is calculated and the non-Vested portion of Agent's Base Amount, if any, shall be forfeited and shall not be subject to restoration.

**B.    TIME FOR PAYMENT AND PAYMENT METHOD.** Deferred compensation under this 2005+ Schedule shall be paid at the earliest time and in the form provided herein:

1.    **Monthly Payment Calculation.** Subject to Section C and except for payments made pursuant to Paragraph B.7, any Payout Amount that becomes payable shall be paid in monthly installments during the applicable Payment Period. Installments with respect to each Payout Amount in payment status will be adjusted as of December 31 annually on the unpaid balance to reflect compounding at the Compounding Rate then in effect. Each Payout Amount then in payment status, so adjusted, will be divided by the number of months left in the applicable Payment Period with respect to the Payout Amount to determine the monthly amount to be paid to Agent or Designated Beneficiary for the next 12 months or to the end of the applicable Payment Period, whichever is less.

2.    **Normal Payment Date.** Subject to Section F, commencing in the calendar month next following the earlier of:

(a)    Agent's 60th birthday, or

(b)    the date Agent's aggregate Calendar Years as an active Agent plus Agent's years of attained age equal 70 (referred to as "The Rule of 70")

Company shall begin payment to Agent of the applicable Payout Amount(s) described in Paragraph A.3.

3.    **Vesting Increase in Base Amount.** In the event payments to Agent have commenced pursuant to Paragraph B.2 and in any subsequent year additional portions of Agent's Base Amount become Vested (whether due to additional deferred compensation being credited to the Base Amount or an increase in the number of Agent's Eligible Years being applied to the Base Amount), such additional Vested amount shall commence to be payable to Agent in January of the calendar year following the addition or crediting of such additional Vested amount over the period of months of the Payment Period applicable to payments to such Agent but such period shall not be reduced by the number of months

Agent has previously received payments. For example, if original payments are being made to Agent over a period of 36 months and 10 monthly payments have been made to Agent at the time an additional Vested amount is to commence to be paid to Agent, such additional Vested amount shall be paid over a period of 36 months and not over a period of 26 months.

4.   **Payment Calculations on Account of Death.**

    (a)   In the event Agent dies while his or her Agent's Contract is in effect and Agent had not begun to receive deferred compensation payments, Agent's Payout Amount shall be 100% and shall be paid in equal monthly installments over 36 months, subject to Section C.

    (b)   In the event Agent dies following termination of his or her Agent's Contract and Agent had not begun to receive deferred compensation payments, the Payout Amount, shall be made in equal monthly installments over 36 months, subject to Section C.

    (c)   If deferred compensation payments to Agent have commenced at the time of Agent's death, Agent's Designated Beneficiary shall receive the balance, if any, of Agent's Payout Amount over the remaining period(s) of payments in effect at the time of Agent's death.

5.   **Beneficiary Designation.**   Agent, and after Agent's death, Agent's Designated Beneficiary may name one or more direct or contingent Designated Beneficiaries to receive the death benefit described in Paragraph B.4. Any portion of the amounts payable hereunder as death benefits which is undisposed of because of Agent's failure to designate a beneficiary or because the Designated Beneficiary has predeceased him or her shall be paid to Agent's estate. Any portion of the amounts payable hereunder as death benefits to a Designated Beneficiary which is undisposed of due to Designated Beneficiary's failure to designate a beneficiary or because his or her beneficiary has predeceased him or her shall be paid to Designated Beneficiary's estate.

6.   **Total Disability.**

    (a)   If Agent shall become Totally Disabled before termination of his or her Agent's Contract, Agent's Payout Amount shall be 100%. In such event, payment will first be made from Agent's Vested Base Amount, followed by the Non-vested Base Amount. Subject to Section C, a Totally Disabled Agent shall receive his or her Payout Amount in 36 monthly installments or the alternative Payment Period designated by Agent pursuant to Paragraph F.2. If Total Disability payments to Agent cease under Paragraph B.6(d), Agent's Payout Amount of the reduced Base Amount shall be calculated pursuant to Paragraph A.3.

    (b)   If Agent shall become Totally Disabled after termination of his or her Agent's Contract, Agent's Payout Amount, subject to Section C, shall be

made in 36 monthly installments or the alternative Payment Period designated by Agent pursuant to Paragraph F.2.

(c)     If deferred compensation payments to Agent have commenced at the time of Agent's Total Disability, Agent's deferred compensation already in payment status shall continue for the applicable Payment Period.

(d)     Total Disability payments shall cease upon Agent no longer being Totally Disabled, but other payments which may be triggered pursuant to the terms of this 2005+ Schedule may commence or continue, subject to a reduction to the Base Amount for Total Disability payments made to Agent pursuant to this Paragraph B.6.

7.     **Hardship Distribution.**  Notwithstanding any other provision of this 2005+ Schedule to the contrary, in the event of an Unforeseeable Emergency, Agent may receive a distribution from Agent's Vested Base Amount.   Any hardship distribution under this Paragraph B.7 shall be treated as a distribution for the purposes of applying Paragraph A.3(b).

If Agent receives a hardship distribution, Agent's Elective Deferrals, if any, shall cease for the remainder of the calendar year in which such hardship distribution occurred.

## C.     ALTERNATIVE LUMP SUM PAYMENT.

1.     **When Payment First Commences.**  If Agent's total Payout Amount determined after any applicable forfeiture under Paragraph A.4. is less than $10,000.00 at the time deferred compensation payment first commences (but not including any hardship distribution under Paragraph B.7), Company shall pay such Payout Amount in a lump sum without compounding and shall not pay such amount in monthly installments.

2.     **After Payments Have Begun.**   After monthly payments of deferred compensation have begun, the Company shall pay Agent or Agent's Designated Beneficiary any remaining monthly payments in lump sum, which, as of December 31 of any calendar year cumulatively total less than $5,000.00, in full discharge of Company's obligations under this 2005+ Schedule. There shall be no compounding on such lump sum payment.

**D.     TRANSFER.**  If, within 30 days of termination of this Contract, Agent enters into an Engagement, then at the Company's option, each year during which Agent is in an Engagement that does not require Agent to personally sell Products may be counted as an Eligible Year.

## E.     ACCOUNTS AND RECORD KEEPING.

1.     **Record Keeping.**  Company will maintain separate accounting records regarding Agent's Base Amount, Payout Amount, Payment Period and Eligible Years. Company may, but is not required to, maintain a separate account for Agent.

2.    **General Obligations and Funds**.  Company's liability for deferred compensation under this 2005+ Schedule is a general obligation of Company.  Any deferred compensation will be paid out of the general funds of Company.

3.    **Anticipation**.  No rights of Agent under this 2005+ Schedule, or of any Designated Beneficiary, shall be transferable, assignable or subject to anticipation.

F.    **ELECTIONS.**

1.    **Normal Payment Beginning Date**.  Notwithstanding Paragraph B.2, Agent may make an initial election to defer the beginning of payments of the Payout Amount provided that such election is made within 30 days of the effective date of the Contract.

Agent may make a later election to defer the beginning of payments of the Payout Amount; provided, however, all of the following must be satisfied:

(a)    such election is made not less than 12 months prior to the date the first payment would otherwise be made;

(b)    the scheduled date for the first payment under the election is 5 or more years after the date the first scheduled payment would have been made but for the election;

(c)    the election does not take effect until 12 months after the date on which the election is made; and

(d)    Agent may not make another election under this Paragraph F.1 during the 12-month period following the date of any prior election.

Once an election has been made under this Paragraph, it may be modified by a subsequent election but only if such subsequent election satisfies all of the requirements of this Paragraph F.1.

2.    **Payment Period**.  Agent may make an initial alternative Payment Period election of not less than 37 months but not more than 120 months as the time period over which equal monthly installments of the Normal Payment and payment in the event of Agent's Total Disability prior to commencement of payments hereunder, within 30 days of the effective date of the Contract.

Agent may make a later Payment Period election for Normal Payment and payment in the event of Agent's Total Disability prior to commencement of payments hereunder, of not less than 37 months but not more than 120 months, provided however, all of the following must be satisfied:

(a)    such election is made not less than 12 months prior to the date of the first payment is to be made,

(b)     the scheduled date for the first payment under the election is 5 or more years after the date the first scheduled payment would have been made but for the election,

(c)     the election does not take effect until 12 months after the date on which the election is made, and

(d)     Agent may not make another election under this Paragraph F.2 during the 12-month period following the date of any prior election.

Once an election has been made under this Paragraph, it may be modified by a subsequent election but only if such subsequent election satisfies all of the requirements of this Paragraph F.2.

G.     **DEFINITIONS.** The definitions set forth below shall apply to both the singular and plural versions of the defined terms.

1.     **"Base Amount"** means deferred compensation credited to Agent pursuant to the terms of this 2005+ Schedule.

2.     **"Calculation Rate"** is set forth in the Qualification Schedule. The Calculation Rate is determined each calendar year based upon the production of Agent in the preceding calendar year.

3.     **"Calendar Year"** is a calendar year for purposes of determining The Rule of 70 in Paragraph B.2(b), during which Agent completes 11 or more consecutive months of service under Contract with Company.

4.     **"Compounding Rate"** is the investment return rate or rates which may be applied to the relevant portion of the components of the Base Amount.

Unless the last paragraph of this Paragraph G.4 applies, the Compounding Rate with respect to the Base Amount shall be determined for each calendar year by the Company subject to Paragraph A.2.

If permitted by Company, Agent may elect, in lieu of the Compounding Rate(s) provided in the preceding paragraph of this Paragraph G.4, to have Company credit his or her Base Amount, as applicable, with a return equal to the net investment return credited to one or more investment media designated by Company for such purposes according to the terms, conditions, rules and procedures as Company may establish. If permitted and Agent so elects, references in this 2005+ Schedule to Compounding Rate shall refer to investment income, earnings, gains and losses on balances credited to Agent's Base Amount at any relevant time. Such designated investment media shall not create a trust for the benefit of or a fiduciary relationship with respect to Agent or any beneficiary and shall not give Agent or any beneficiary a preferential claim against any assets of Company. Company is not required to actually invest in such investment media. Rather, net investment returns on such media are merely used as the point of reference for calculating the Compounding Rate while any such election is in

effect. All investment risk and reward with respect to such election will accrue to the benefit of Agent and his or her Designated Beneficiary. Provided, however, that at the commencement of a Payment Period, the Compounding Rate applicable to such Payment Period shall be determined by the Company and Agent shall not have any further election under this provision.

5.   **"Designated Beneficiary"** means the person(s) designated in writing by Agent, or following Agent's death, his or her Designated Beneficiary, to receive, under certain circumstances, payments of deferred compensation.

6.   **"Elective Deferral"** If permitted by Company, Elective Deferral shall mean the amount, if any, of compensation from Company that Agent elects to defer for a calendar year. For purposes of this Paragraph G.6 "compensation" means any amounts Company designates as eligible for deferral hereunder. A deferral election may be made on a form provided by Company for that purpose. A deferral election shall relate to compensation otherwise payable to Agent during the succeeding calendar year(s). An Elective Deferral shall be effective for an entire calendar year and may not be revoked during a calendar year unless Agent experiences an Unforeseeable Emergency during such calendar year. An Elective Deferral remains in effect until revoked as provided in this Paragraph G.6. To be effective, a deferral election or a revocation (except in the case of an Unforeseeable Emergency) must be received by Company no later than the December 1st immediately preceding the first calendar year to which such deferral election or revocation of a deferral election relates. Notwithstanding any other provision in this 2005+ Schedule, Agent may not elect to defer compensation during any period Agent is receiving payments of his or her deferred compensation under a prior contract with Company.

Elective Deferrals will be compounded as provided in Paragraph G.4.

The Payout Amount that applies to Agent's Elective Deferrals is 100%. The Payout Amount that applies to compounding on Agent's Elective Deferrals is the Payout Amount that otherwise applies to Agent's Base Amount at any relevant point in time or on the occurrence of Agent's death or Total Disability.

7.   **"Eligible Moneys"** means the amounts upon which new deferred compensation under this 2005+ Schedule will be calculated. Eligible Moneys will be defined by Product in the commission notifications as published by Company from time-to-time.

8.   **"Eligible Year"** means a calendar year during which Agent produced at least the minimum production as defined in the Qualification Schedule.

9.   **"Engagement"** means entering into a relationship with Company in some capacity relating to Company's business.

10.  **"Internal Revenue Code"** means the Internal Revenue Code of 1986 as amended from time-to-time.

11. **"Payment Period"** means the number of months over which deferred compensation will be paid. The Payment Period shall be 36 months unless Agent elects a different period as set forth in Section F.2.

12. **"Qualification Schedule"** means Qualification Schedule 204 or Qualification Schedule 212 for New York Agents, as the case may be, as amended from time-to-time, the terms of which are incorporated herein by this reference.

13. **"2005+ Schedule"** shall mean this 2005+ Schedule relating to deferred compensation and compounding thereon as provided herein (258).

14. **"Total Disability" or "Totally Disabled"** means Agent is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months; or, if Agent has become a common law employee of Company, such former Agent has a Total Disability, if by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, such former Agent has received income replacement benefits for a period of not less than 3 consecutive months under an accident or health plan covering employees of Company.

15. **"Unforeseeable Emergency"** shall mean a severe financial hardship to Agent or former Agent (who has unpaid Vested deferred compensation under this 2005+ Schedule) resulting from an illness or accident of Agent or former Agent, or Agent's or former Agent's spouse or dependent (as defined in Internal Revenue Code Section 152(a)), loss of Agent's or former Agent's property due to casualty, or other similar extraordinary or unforeseeable circumstances arising as a result of events beyond the control of Agent or former Agent. The term Unforeseeable Emergency shall be construed and applied in accordance with applicable regulations issued by the Secretary of the Treasury pursuant to Internal Revenue Code Section 409A. Agent will provide Company with such documentation as Company may request to establish the existence of an Unforeseeable Emergency.

16. **"Vested"** shall mean that portion of Agent's deferred compensation that is subject to a Payout Amount.

17. **"Vesting"** shall mean, at any given time, increases in Agent's Payout Amount, if any, with respect to the Base Amount determined pursuant to Paragraph A(3)(a) and increases Agent's Payout Amount with respect to Elective Deferrals, if any, pursuant to Paragraph G(6).

## H.  AMENDMENTS AND CONSTRUCTION.

1. This 2005+ Schedule may be amended by the Company upon written notice to Agent. However, if Agent terminates this 2005+ Schedule within 30 days of receiving written notice of amendment, then such amendment shall not be effective. However, Company may not amend this 2005+ Schedule as to the time for commencement of payment of deferred compensation or the form of deferred

compensation payments unless permitted by Internal Revenue Code Section 409A or regulations issued by the Secretary of Treasury thereunder.

2.  This 2005+ Schedule shall be construed and operated in accordance with the provisions of Internal Revenue Code Section 409A and regulations issued thereunder. In the event any provision of this 2005+ Schedule fails to satisfy the requirements of such Internal Revenue Code Section or regulations, such provision shall be construed in the manner necessary to comply with Internal Revenue Code Section 409A or it shall be deemed to be deleted.

3.  The Company will interpret this 2005+ Schedule in accordance with its terms and their intended meaning. If, due to errors in drafting, a provision does not accurately reflect its intended meaning, as demonstrated by consistent interpretations by the Company or other evidence of intention, the provision will be considered ambiguous and will be interpreted by the Company in a fashion consistent with its intent. This Paragraph H.3 may not be invoked by Agent or any other person to require this 2005+ Schedule to be interpreted in a manner which is inconsistent with its interpretation by the Company.

**THIS 2005+ SCHEDULE, IF APPLICABLE, IS INCORPORATED INTO THE AGENT'S CONTRACT, EFFECTIVE AS OF THE LATER OF THE 1ST DAY OF JANUARY, 2005 OR THE EFFECTIVE DATE OF THE AGENT'S CONTRACT AND SHALL REMAIN EFFECTIVE UNTIL CANCELLED OR OTHERWISE AMENDED AS INDICATED ABOVE.**

*Pat Shiverdecker*

Pat Shiverdecker
Authorized Representative

FIRST CLASS

CERTIFIED MAIL

7006 1140 0002 5991 8892

MUTUAL OF OMAHA INSURANCE COMPANY   12/19/200
MUTUAL OF OMAHA PLAZA
OMAHA, NE 68175
7006 1140 0002 5991 8892